CARLTON, J.,
specially concurring:
¶ 31. I specially concur with the majority’s opinion and write separately to address the evidence of willful and contumacious contempt. As acknowledged by the majority, the chancellor found that Brewer was in willful and contumacious contempt of prior orders of the court. At first blush, Brewer’s argument appears to possess merit in his assertion that the evidence shows a lack of willfulness on his *147 behalf in failing to comply with the child-support order set forth in the 2005 divorce decree. In support of his claims, Brewer argues that both parties signed a memorandum of understanding as to the agreed terms of the private mediation to be effective August 1, 2006, and their counsel signed a proposed “Agreed Order.”[1] The terms of the parties’ memorandum of understanding reduced the amount of child support Brewer was obligated to pay effective August 1, 2006.
¶ 32. The record shows, however, that in October 2009, upon discovery of the failure to both file and obtain court approval of the proposed Agreed Order, Brewer sought relief from the chancellor.[2] In 2009, after the court refused to grant relief to enforce or approve the proposed terms of the Agreed Order or the parties’ agreement, Brewer still failed to pay the child support amount ordered in the existing 2005 divorce decree. Clearly, upon the chancellor’s denial of Brewer’s request to enforce the terms of the parties’ agreement as set forth in the proposed Agreed Order, Brewer could no longer credibly assert that he acted in good faith in relying on his mistaken belief that the proposed Agreed Order had been properly filed or approved by the court in 2006, or assert that he relied on a mistaken belief of the effectiveness of the 2006 agreement of the parties.[3]
¶ 33. As stated, the chancellor denied Brewer’s relief in October 2009, and the hearing on the chancellor’s finding of contempt was held on June 14, 2011. Brewer knowingly continued to pay the reduced child support as set out in the proposed Agreed Order, despite knowing that the chancellor denied to enforce the terms of the mediated agreement and previously proposed order. The evidence in the record clearly supports the chancellor’s finding of willful and contumacious contempt. *148 See Williamson v. Williamson, 81 So.3d 262, 266-67 (¶ 11) (Miss.Ct.App.2012) (setting forth the standard of review for contempt actions).
¶ 34. Additionally, the record reflects substantial evidence supporting the chancellor’s finding that Brewer was delinquent in paying child support as reflected in the arrearage since the court never approved the proposed Agreed Order or granted relief to enforce the terms set forth therein. The parties bear the responsibility of checking the court file to determine if the order was entered. See Field v. Lamar, 822 So.2d 893, 899 (¶ 24) (Miss.2002) (after failing to obtain a ruling on a matter under court advisement, the court found that the failure to file a writ of mandamus was not excusable neglect); Estate of Ware v. Capers, 573 So.2d 773, 775 (Miss.1990)(ad-dressing the failure to learn of entry of order or judgment, court found that counsel possessed a duty to check the court file regularly when the case is under advisement by the court); Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984) (in finding that gross negligence, ignorance of the rules, and ignorance of the law by the party to a lawsuit fails to provide a sufficient basis for relief from a judgment, the court also provided that neither ignorance nor carelessness on the part of an attorney will provide grounds for relief). Therefore, until such approval by the court and entry, the prior decree of the court stood, and the chancellor correctly acknowledged that parents cannot contract away rights vested in minor children.[4] The evidence in the record supports the chancellor’s finding of willful and contumacious contempt.

. The parties received a no fault divorce in 2005. The record reflects that Brewer understood that the agreement reached in mediation, as documented in their memorandum of understanding signed by both parties, had taken effect August 1, 2006. The agreement set forth in the parties’ memorandum of understanding reduced the child-support obligation to $600 a month until the youngest child was emancipated. As stated, both Brewer and Holliday signed the memorandum of understanding, as did their counsel. Counsel for both parties signed an agreed order that carried out the terms of the mediated agreement as set forth in the memorandum of understanding. As stated, the memorandum of understanding was signed by both Brewer and Holliday and their counsel.

. Upon this discovery of the lack of entry of the Agreed Order, Holliday chose to rescind her signature from their previous agreement and did not join Brewer in his request for delinquent approval of the mediated agreement terms set forth in the 2006 proposed Agreed Order.

. In support of his argument that his failure to comply with the prior orders of the court were not willful or contumacious, Brewer relies on the evidence of state of mind and intent as reflected in emails from Holliday to Brewer wherein she acknowledged that the Agreed Order was to be effective August 1, 2006, and that the reduced child support amount set forth in that Agreed Order would then be due. Evidence also shows that Holli-day's actions reflected her belief that the Agreed Order had been entered. Even though the original 2005 divorce decree allowed Brewer to claim both children on his taxes, pursuant to terms of the Agreed Order, carrying out the terms of the mediated agreement, Holliday began claiming the parties’ youngest child on her taxes. Additionally, displaying evidence of a mistaken belief that the Agreed Order was entered, the parties' oldest child, John, moved to his father’s residence from his mother's, indicating the parties’ mistaken belief the custody change per the new agreement became effective. The record also reflects that Holliday’s attorney sent a letter to Brewer’s attorney stating that “pursuant to the memorandum opinion,” the child support changed August 1, 2006.

. See Calton v. Calton, 485 So.2d 309, 310-11 (Miss. 1986); see also Miss.Code Ann. § 93-5-2 (Supp.2012); § 93-11-65 (Supp.2012).